UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

ANGELA GONNEVILLE, individually
and on behalf of all others similarly
situated,

      Plaintiff,

v.

LENS.COM, INC.,

      Defendant.

Civ. A. No. 1:24-cv-11110

**DEFENDANT LENS.COM, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO TRANSFER VENUE TO THE DISTRICT OF NEVADA
<u>PURSUANT TO 28 U.S.C. § 1404</u>**

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

MEMORANDUM OF LAW ............................................................................................... 2

I.      BACKGROUND FACTS ......................................................................................... 2

II.     LEGAL STANDARD ............................................................................................... 4

III.    ARGUMENT ............................................................................................................ 5

   A.   Gonneville Agreed to Bring this Action in Nevada............................................... 5

   B.   Nevada Law Requires Transfer. .......................................................................... 6

   C.   Massachusetts Law Requires Transfer................................................................. 8

   D.   Gonneville Acknowledges the Enforceability of the Terms of Use. ................... 9

   E.   Gonneville's Claims Are Within the Scope of the Mandatory Forum Selection Clause.. 10

   F.   The Forum Selection Clause Is Not Unreasonable, Unjust, or the Product of Fraud or Overreach. ....................................................................................... 11

      1.   Gonneville Cannot Demonstrate Fraud Because the Terms of Use Were Reasonably Communicated. ....................................................................... 11

      2.   Enforcement of the Forum Selection Clause Is Not Unreasonable or Unjust. ............. 12

      3.   Gonneville Will Not Be Deprived of Her Day in Court. .............................. 12

      4.   Transfer Is Not Against Public Policy; It Furthers Public Policy.................. 13

   G.   The Public Interest Factors Support Transfer. ..................................................... 14

      1.   Transfer to Nevada Will Enable Consolidation, Conserve Judicial Resources and Avoid Inconsistent Rulings............................................... 15

      2.   Congestion in the Court and Burden on Juries Favors Transfer to Nevada.................. 16

      3.   Desirability of Having Localized Controversies Decided at Home............................. 17

      4.   The Difficulty in Determining Applicable Law and Applying Foreign Law Favors Transfer to Nevada................................................................ 17

IV.    CONCLUSION......................................................................................................... 17

# TABLE OF AUTHORITIES

## Cases

*Ajemian v. Yahoo!, Inc.*,
   987 N.E.2d 604 (Mass. App. Ct. 2013) ...................................................................... 9

*Am. First Fed. Credit Union v. Soro*,
   359 P.3d 105 (Nev. 2015) ........................................................................................ 10

*Anand v. Heath*,
   2019 U.S. Dist. LEXIS 109076 (N.D. Ill. June 28, 2019) ........................................ 8

*Archer v. Grubhub, Inc.*,
   490 Mass. 352 (2022) ................................................................................................ 9

*Atlantic Marine Construction Co. v. United States District Court*,
   571 U.S. 49 (2013) ..................................................................................................... 1

*Caludio-de Leon v. Sistema Universitario Ana G. Mendez*,
   775 F.3d 41 (1st Cir. 2014) ...................................................................................... 10

*Carnival Cruise Lines, Inc. v. Shute*,
   499 U.S. 585 (1991) ................................................................................................. 12

*Cianbro Corp. v. Curran-Lavoie, Inc.*,
   814 F.2d 7 (1st Cir. 1987) ........................................................................................ 15

*Cont'l Grain Co. v. Barge FBL-585*,
   364 U.S. 19 (1960) ................................................................................................... 15

*Emmannuel v. Handy Techs. Inc.*,
   442 F. Supp. 3d 385 (D. Mass. Feb. 27, 2020) ........................................................ 9

*Eubanks v. Gasbuddy, LLC*,
   2022 U.S. Digst. LEXIS 207705 (D. Mass. Nov. 16, 2022)...................................... 9

*Firemen's Ins. Co. v. Ace Am. Ins. Co.*,
   390 F. Supp. 3d 267 (D. Mass. 2019) ..................................................................... 14

*Furness v. Wright Med. Tech., Inc.*,
   402 F.3d 62 (1st Cir. 2005) ...................................................................................... 13

*Gaker v. Citizens Disability, LLC*,
   654 F. Supp. 3d 66 (D. Mass. 2023) ......................................................................... 8

*Grice v. VIM Holdings Grp., LLC*,
   280 F. Supp. 3d 258 (D. Mass. 2017) ..................................................................... 12

*Hauff v. Heward*,
   2020 Nev. Dist. LEXIS 595 (Aug. 28, 2020) ....................................................... 7, 8

*Hufffington v. T.C. Group, Inc.*,
   637 F.3d 18 (1st Cir. 2011) ...................................................................................... 11

*Johnson v. New York Life Ins. Co.*,
   2013 U.S. Dist. LEXIS 35434 (D. Mass. Mar. 14, 2013)................................... 15, 16

*Kauders v. Uber Technologies, Inc.*,
   159 N.E.3d 1033 (Mass. 2021) .................................................................................. 9

*Lewis v. Hill*,
   2023 U.S. Dist. LEXIS 126710 (D. Mass. July 24, 2023) ...................................... 10

*Myer v. Uber Techs., Inc.*,
   868 F.3d 66 (2d Cir. 2017).......................................................................................... 7

*Nguyen v. Barnes & Noble Inc.*,
    763 F.3d 1171 (9th Cir. 2014) ........................................................................ 6

*Rafael Rodriguez Barril, Inc. v. Conbraco Indus.*,
    619 F.3d 90 (1st Cir. 2010) ........................................................................ 11

*Rivera v. Centro Medico de Turabo, Inc.*,
    575 F.3d 10 (1st Cir. 2009) .................................................................. 10, 12

*Rodriguez v. Experian Services Corp.*,
    2015 U.S. Dist. LEXIS 187273 (C.D. Cal. Oct. 5, 2015) .............................. 7, 11

*Samsung Electronics Co., Ltd. v. Rambus, Inc.*,
    386 F. Supp. 2d 708 (E.D. Va. 2005) .......................................................... 15

*Scherk v. Alberto-Culver Co.*,
    417 U.S. 506 (1974) .................................................................................. 11

*Stewart Org., Inc. v. Ricoh Corp.*,
    487 U.S. 22 (1988) .................................................................................... 4

*The Bremen v. Zapata Off-Shore Co.*,
    407 U.S. 1 (1972) ..................................................................................... 11

*Wiley v. Gerber Prods. Co.*,
    667 F. Supp. 2d 171 (D. Mass. 2009) .................................................... 13, 14

## Statutes

28 U.S.C § 1404(a) ................................................................................... 1

## Rules

Fed. R. Civ. P. 42(a) ................................................................................. 16

## INTRODUCTION

Defendant Lens.com, Inc. ("Lens.com"), pursuant to 28 U.S.C § 1404(a), hereby moves this Court for an order transferring this action to the United States District Court for the District of Nevada. Lens.com's Motion is based on the valid and enforceable forum selection clause contained in Lens.com's Terms & Conditions of Use ("Terms of Use"), attached hereto in the Declaration of Tim Jaeck ("Jaeck Dec.") as Exhibit A, which requires this case to be transferred to Nevada.

Plaintiff Angela Gonneville ("Gonneville" or "Plaintiff") concedes in her First Amended Complaint ("Complaint") that Lens.com's Terms of Use are binding and applicable to her and all other members of her putative class when they purchased products on Lens.com's website. Furthermore, transfer to Nevada will conserve judicial resources by enabling Lens.com to move to consolidate five recently filed class actions, including one pending in the District of Nevada, that involve the same allegations and overlapping class definitions.

Lens.com's Terms of Use provide that "[a]ny litigation arising out of or in connection with the use of this site shall be exclusively venued in state or federal courts located in Clark County, Nevada." Applying the framework established by the U.S. Supreme Court in *Atlantic Marine Construction Co. v. United States Dist. Court*, 571 U.S. 49 (2013), the Court should enforce the forum selection clause and transfer this case. The forum selection clause here is mandatory, broad, and covers all of Plaintiff's asserted claims. The clause is valid and enforceable. Furthermore, the forum selection clause was not procured by fraud or overreach, its application would not deprive Gonneville of her day in court, and far from contravening any public policy in this forum, enforcement furthers public policy. Finally, there are no public interest considerations that might otherwise preclude enforcing the clause. Even absent a valid

forum selection clause, the interest of justice favors transfer to Nevada, where one purported

nationwide class action is already pending. Transfer to Nevada would also allow for the

consolidation of this and four other pending class actions involving similar factual allegations,

legal issues, and overlapping class definitions.

For these reasons, Lens.com respectfully requests that this Honorable Court enter an

order transferring this action to the District of Nevada.

## **MEMORANDUM OF LAW**

Gonneville, and members of her purported class, agreed to resolve "[a]ny litigation

arising out of or in connection with the use of" Lens.com's website in Nevada. *See* Terms of

Use, Jaeck Dec., Ex. A at 7. Pursuant to 28 U.S.C. § 1404(a), the Court should enforce the

parties' forum selection clause and transfer the case to the District of Nevada, where an earlier

action has already been filed against Lens.com, in accordance with the Terms of Use, and

already asserts a nationwide class (*Franks v. Lens.com, Inc.*, 2:24-cv-00724 in the District of

Nevada).

## I.     BACKGROUND FACTS

Defendant Lens.com is an online retailer that sells contact lenses to consumers on its

website (https://www.lens.com). First Amended Complaint ("Compl.") ¶ 8. Lens.com is

incorporated and headquartered in Nevada. *Id*. ¶ 4; Jaeck Dec. ¶ 5.

Gonneville is a Massachusetts resident who filed this class action against Lens.com for

"unfair and deceptive sales practices" because Lens.com allegedly "adds an undisclosed and

non-itemized 'processing charge' to contact lens orders." Compl. ¶ 1. The gist of Gonneville's

complaint is that Lens.com "fails to disclose or itemize its processing fee during online

transactions and inflates the total transaction price." *Id.* ¶ 15. Gonneville herself "ordered three boxes of contact lenses" from Lens.com's website on three separate occasions. *Id.* ¶¶ 20–22.

However, Gonneville is not the only plaintiff seeking damages from Lens.com for allegedly improper processing charges. There are five recently filed lawsuits, including one already in Nevada, involving the same allegations of a wrongful charge for "Taxes & Fees": 1) the present case; 2) *Franks v. Lens.com, Inc.*, 2:24-cv-00724 in the District of Nevada; 3) *Nail v. Lens.com, Inc.*, Case No. 2:24-cv-02531 in the Central District of California; 4) *Fitzpatrick v. Lens.com, Inc.*, Case No. 1:24-cv-002700 in the Northern District of Illinois; and 5) *Martin v. Lens.com, Inc.*, Case No. 0:24-cv-60489 in the Southern District of Florida. Jaeck Dec. ¶ 14. The proposed classes in these lawsuits overlap. Gonneville's action here and the earlier Nevada lawsuit both propose a nationwide class of consumers while the three other lawsuits propose classes of consumers in the state where the lawsuit was filed.

Although the duplicative and overlapping lawsuits independently favor transfer and consolidation, each plaintiff in the five lawsuits, including Gonneville, agreed to a valid forum selection clause found in the Terms of Use on Lens.com's website. Those Terms of Use contain a choice of law and forum selection clause under the heading "GOVERNING LAW AND VENUE:"

> These Terms and Conditions of Use shall be governed by and construed in accordance with the laws of the State of Nevada, without regard to choice of law rules. **Any litigation arising out of or in connection with the use of this site shall be exclusively venued in state or federal courts located in Clark County, Nevada**, with you and Lens.com waiving the right to trial by jury, agreeing that each party to litigation shall bear its own attorney's fees and costs, and waiving any objections to personal jurisdiction and the appropriateness of this venue, including those arising under the doctrine of forum non conveniens.

Jaeck Dec., Ex. A at 7 (emphasis added).

Lens.com's Terms of Use are presented to all consumers, including Plaintiff and all members of the putative class, who are seeking to purchase contact lenses from Lens.com. Before completing a transaction, including the transactions at issue in this case, a consumer is informed that "By continuing you agree to our <u>Terms of Use</u> & <u>Privacy Policy</u>" (underline in original). Gonneville thus affirmatively agreed to abide by Lens.com's Terms of Use, including the forum selection clause, on all three occasions that she ordered contact lenses. Each plaintiff in the five pending lawsuits also agreed to this forum selection clause, as did all members of each of the putative classes.

Despite her agreement to litigate disputes against Lens.com in Nevada, Gonneville filed this purported class action in the Suffolk Superior Court. Lens.com removed this action on April 25, 2024. ECF No. 1.

## II.   LEGAL STANDARD

This action should have been brought in the District of Nevada because under the Terms of Use, "Any litigation arising out of or in connection with the use of this site shall be exclusively venued in state or federal courts located in Clark County, Nevada." Jaeck Dec., Ex. A at 7.

Pursuant to 28 U.S.C. § 1404(a), "a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." The Supreme Court held that "a forum-selection clause may be enforced by a motion to transfer under § 1404(a)." *Atlantic Marine*, 571 U.S. at 52. "The 'enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system.'" *Id.* at 63 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (Kennedy, J., concurring)). For this

4

reason, the forum selection clause is "given controlling weight in all but the most exceptional cases." *Id.* at 60 (quoting *Stewart*, 487 U.S. at 33).

When assessing a motion to transfer venue, a court ordinarily balances the private interests of the parties, such as convenience, and "various public-interest considerations" to consider whether transfer would "promote 'the interest of justice.'" *Id.* at 62–63 (quoting § 1404(a)). But when a forum selection clause is present, courts "must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Id.* at 64. Accordingly, "the plaintiff's choice of forum merits no weight" and "the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.* at 63. Thus, the court "should not consider arguments about the parties' private interests" but "may consider arguments about public interest factors only." *Id.* at 64. "In all but the most unusual cases, therefore, 'the interest of justice' is served by holding parties to their bargain." *Id.* at 66.

The Supreme Court thus made it exceedingly clear that "a district court should transfer the case unless extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer." *Id.* at 52. There are no extraordinary circumstances here. Applying the standards from *Atlantic Marine*, this Court should transfer this case to the District of Nevada.

## III.   ARGUMENT

### A.   Gonneville Agreed to Bring this Action in Nevada.

Gonneville admits that she "ordered three boxes of contact lenses" on Lens.com's website three different times. Compl. ¶¶ 20–22. As such, Gonneville was presented with and agreed to Lens.com's Terms of Use all three times that she purchased contact lenses from Lens.com's website. These Terms of Use are presented to consumers on Lens.com's shipping information and order summary page. Jaeck Dec. ¶ 9. Before a user may select "Continue" or

5

"Go to Check Out," the user must agree to Lens.com's "<u>Terms of Use</u> & <u>Privacy Policy</u>." *Id.* ¶ 10. Specifically, the website states, "By continuing you agree to our <u>Terms of Use</u> & <u>Privacy Policy</u>" (underline in original*). Id.* The underlined text, "<u>Terms of Use</u> & <u>Privacy Policy</u>," are hyperlinks to Lens.com's Terms of Use and Privacy Policy. *Id.* ¶ 12. Images of the "Continue" and "Go to Checkout" buttons on Lens.com's website, referenced above, are shown below.

**Continue**

By continuing you agree to our <u>Terms of Use</u> & <u>Privacy Policy</u>

**Go To Checkout**

By continuing you agree to our <u>Terms of Use</u> & <u>Privacy Policy</u>

Jaeck Dec., Ex. B. The Terms of Use state in relevant part that "[a]ny litigation arising out of or in connection with the use of this site shall be exclusively venued in state or federal courts located in Clark County, Nevada." Ex. A at 7. Furthermore, the enforceability of the Terms of Use are to be evaluated under Nevada Law "without regard to choice of law rules." *Id.*

**B.     Nevada Law Requires Transfer.**

Under Nevada law, the parties' online agreement (namely, the Terms of Use) is binding on both parties, including the forum selection clause. "Online agreements … generally come in three varieties: browsewrap, clickwrap, and hybrid." *My Daily Choice, Inc. v. Butler*, 2021 U.S. Dist. LEXIS 147732, *15–16 (D. Nev. Aug. 6, 2021). "Browsewrap agreements, which are infrequently enforced, do not require a user 'to manifest assent to the terms and conditions expressly;' the mere act of 'using the website' is taken as consent." *Id.* at *16 (citing *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014)). "Clickwrap agreements, which are

6

often enforced, require a user to 'click on an 'I agree' box after being presented with a list of terms and conditions of use.'" *Id.* "Hybrid agreements meld aspects of both, often 'notif[ying] the user of the existence of the website's terms of use 'via a hyperlink, requiring a user to click 'I agree,' or merely 'advis[ing] the user that he or she is agreeing to the terms of service when registering or signing up' with the company." *Id.* (citing *Myer v. Uber Techs., Inc.*, 868 F.3d 66, 75–76 (2d Cir. 2017)). "The enforceability of each type of agreement turns on whether a user had actual or constructive notice of the terms, sufficient to demonstrate mutual assent to its conditions." *Id.* "Courts … have consistently enforced agreements presented to users as clear, hyperlinked terms located near a required 'I agree' button, despite the agreement being imposed unilaterally on the user and the user not actually reading the terms." *Id.* (citing *Rodriguez v. Experian Services Corp.*, 2015 U.S. Dist. LEXIS 187273, *2 (C.D. Cal. Oct. 5, 2015) (enforcing an arbitration clause hyperlinked on a website, which included an express disclosure and agreement stating "By clicking the button above … you agree to our Terms of Use").

In *Hauff v. Heward,* 2020 Nev. Dist. LEXIS 595, *13 (Aug. 28, 2020), the Eighth Judicial District Court of Nevada held that a hybrid agreement nearly identical to Lens.com's Terms of Use was enforceable. *Hauff*, 2020 Nev. Dist. LEXIS 595 at *15. The court noted that "[d]irectly below the page where the prospective operator inputs his/her first and last name, there is an arrow on the lower right of the screen for the user to 'click' to continue." *Id.* at *16. "To the arrow's left is the statement 'By continuing, I confirm that I have read and agree to the Terms & Conditions and Privacy Policy.'" *Id.* "'Terms & Conditions' and 'Privacy Policy' are highlighted in a different color than the rest of the text and hyperlinked." *Id.* The *Hauff* court found that "[a]lthough the sentence is in smaller font than that contained on the top of the screen, the dark print contrasts with the white background and hyperlinks are in blue." *Id.* The *Hauff* court also

found that "[s]ervice is provided simultaneously to enrollment, thereby connecting the contractual terms to the services to which they apply" and that "a reasonably prudent smart-phone operator would understand the terms are connected to the creation of a user account." *Id.*

The facts in *Hauff* are analogous to the facts in this case. Here, directly below where the prospective purchaser inputs his/her first and last name, there is a "Continue" button in the center of the screen for the user to "click" to continue. Jaeck Dec., Ex. B. Directly below the "Continue" button is the statement "By continuing you agree to our Terms of Use & Privacy Policy." Jaeck Dec. ¶ 10. "Terms of Use" and "Privacy Policy" are underlined, hyperlinked, and change color from black to red when hovered over with the cursor. *Id.* ¶¶ 11–12. The Terms of Use are presented on the shipping information and order summary page, after the user has selected items for purchase but before checkout, thereby connecting the contractual terms to the transactions to which they apply. Here, as the court found in *Hauff*, a reasonably prudent online shopper would understand the Terms of Use are connected to purchasing contacts on Lens.com's website. Accordingly, Gonneville agreed to be bound to the Terms of Use, including the forum selection clause.

### C.   Massachusetts Law Requires Transfer.

Even if the Court were to apply Massachusetts law and not Nevada law, transfer is still required because Lens.com's Terms of Use are also enforceable under Massachusetts law. *See Gaker v. Citizens Disability, LLC*, 654 F. Supp. 3d 66, 73 (D. Mass. 2023) ("Generally, courts 'will give effect to hybridwrap terms where the button required to perform the action manifesting assent . . . is located directly next to a hyperlink to the terms and a notice informing the user that, by clicking the button, the user is agreeing to those terms.'") (quoting *Anand v. Heath*, 2019 U.S. Dist. LEXIS 109076 (N.D. Ill. June 28, 2019)). As described above, the hybridwrap here has a

"Continue" button placed directly above the statement that "By Continuing you agree to our Terms of Use & Privacy Policy." This is an enforceable hybridwrap agreement.

Furthermore, online agreements have been found to be enforceable when there is "both reasonable notice of the terms and a reasonable manifestation of assent to those terms." *Kauders v. Uber Technologies, Inc.*, 159 N.E.3d 1033, 572 (Mass. 2021) (citing *Ajemian v. Yahoo!, Inc.*, 987 N.E.2d 604, 611 (Mass. App. Ct. 2013)). "Reasonable notice of a contract's terms exists even if the party did not actually view the agreement, so long as the party had an adequate opportunity to do so." *Archer v. Grubhub, Inc.*, 490 Mass. 352, 361–362 (2022). "Whether a plaintiff actually scrolled through all of the terms presented to them does not affect whether they were reasonably provided notice of their existence." *Eubanks v. Gasbuddy, LLC*, 2022 U.S. Dist. LEXIS 207705, *9–10 (D. Mass. Nov. 16, 2022) (citing *Emmannuel v. Handy Techs. Inc.*, 442 F. Supp. 3d 385, 393 (D. Mass. Feb. 27, 2020)).

In this case, there was reasonable notice to Gonneville because, as described above, the hyperlink was conspicuously located directly below and adjacent to the "Continue" button. There was also a reasonable manifestation of assent because the user is notified that by clicking "Continue" the user "agree[s] to our Terms of Use & Privacy Policy." This process thus provides the same level of affirmative action as clicking a checkbox. As such, each of the three times Gonneville purchased lenses from Lens.com, she agreed to the forum selection clause contained within Lens.com's Terms of Use.

### D.    Gonneville Acknowledges the Enforceability of the Terms of Use.

Beyond the fact that the Terms of Use are clearly enforceable under both Nevada and Massachusetts law, Gonneville has acknowledged the enforceability of these provisions. In paragraph 37 of her Complaint, Gonneville notes that her purchases and those of other class

members "constituted a contract between them and Lens.com, namely through the terms and conditions on the Lens.com site." Compl. ¶ 37. Gonneville has thereby acknowledged that the Terms of Use are a binding contract. Consequently, Gonneville must abide by the Terms of the Use which require transfer of this matter to Nevada.

### E.   Gonneville's Claims Are Within the Scope of the Mandatory Forum Selection Clause.

In the First Circuit, "mandatory forum selection clauses contain clear language indicating that jurisdiction and venue are appropriate exclusively in the designated forum." *Caludio-de Leon v. Sistema Universitario Ana G. Mendez*, 775 F.3d 41, 46 (1st Cir. 2014) (quoting *Rivera v. Centro Medico de Turabo, Inc.*, 575 F.3d 10, 17 (1st Cir. 2009)). In contrast, permissive clauses "authorize jurisdiction and venue in a designated forum, but do not prohibit litigation elsewhere." *Id.* (quoting *Rivera*, 575 F.3d at 17).

The forum selection clause in this case is mandatory because it contains language that clearly designates the chosen forum as exclusive: "*Any* litigation arising out of or in connection with the use of this site *shall be exclusively* venued in state or federal courts located in Clark County, Nevada." Jaeck Dec., Ex. A. at 7 (emphasis added). These terms are unambiguous. This language is clearly mandatory because a party can only bring suit in Nevada. *See Lewis v. Hill*, 2023 U.S. Dist. LEXIS 126710, *52 (D. Mass. July 24, 2023) ("The use of the words 'shall' and 'must' in the provisions both point to interpreting this clause as mandatory."); *see also Am. First Fed. Credit Union v. Soro*, 359 P.3d 105, 107–08 (Nev. 2015) (agreeing with federal courts that found language to be mandatory when it required a particular court to have jurisdiction).

Furthermore, the forum selection clause clearly encompasses Gonneville's claims because Gonneville used Lens.com's website on three separate occasions to purchase contact

lenses and acknowledges the Terms of Use form part of her contract. Compl. ¶¶ 20–22, 34. Thus, the claims clearly arise "out of or in connection with the use of" Lens.com's website. *See* Jaeck Dec., Ex. A at 7.

### F.   The Forum Selection Clause Is Not Unreasonable, Unjust, or the Product of Fraud or Overreach.

It is well-settled that "a forum selection clause is prima facie valid." *Claudio-De Leon*, 775 F.3d at 48 (quoting *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972)). Forum selection clauses should only be invalidated when: "(1) the clause was the product of fraud or overreaching; (2) enforcement would be unreasonable and unjust; (3) proceedings in the contractual forum will be so gravely difficult and inconvenient that [the party challenging the clause] will for all practical purposes be deprived of his day in court; or enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision." *Id.* at *48–49 (quoting *Rafael Rodriguez Barril, Inc. v. Conbraco Indus.*, 619 F.3d 90, 93 (1st Cir. 2010)). Gonneville pleads no facts that would support invalidation of the forum selection clause.

### 1.   Gonneville Cannot Demonstrate Fraud Because the Terms of Use Were Reasonably Communicated.

First, Gonneville cannot show that the forum selection clause was procured by fraud. This factor requires a showing "the inclusion of that clause in the contract was the product of fraud or coercion." *Hufffington v. T.C. Group, Inc.*, 637 F.3d 18, 24 (1st Cir. 2011) (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 n.14 (1974)). Gonneville has not pleaded the facts necessary to meet the heavy burden of showing that the forum selection clause was included in Lens.com's Terms of Use because of fraud or coercion. None of the conduct that Gonneville has alleged involves any sort of fraud or coercion related to the forum selection

clause. Indeed, Gonneville was free to walk away and purchase contact lenses from another source without agreeing to Lens.com's Terms of Use. She instead chose to purchase lenses from Lens.com three times and acknowledged her assent to the Terms of Use in her Complaint. Compl. ¶ 37.

### 2.    Enforcement of the Forum Selection Clause Is Not Unreasonable or Unjust.

Gonneville has plead no facts that would demonstrate enforcement of the forum selection clause is unreasonable or unjust. Enforcement of a forum selection clause could be unreasonable or unjust when "(1) a party was coerced into signing it, [or] (2) the party was in an inferior bargaining position when it was negotiated." *Grice v. VIM Holdings Grp., LLC*, 280 F. Supp. 3d 258, 281 (D. Mass. 2017). However, "inequality is not enough to render an agreement unenforceable." *Id.* at 282 (quoting *Rivera*, 575 F.3d at 21). "There must be some evidence that the party has exploited this bargaining power in a way that the courts will not tolerate." *Id.* (quoting *Rivera*, 575 F.3d at 21). In fact, the "Supreme Court has noted that a forum selection clause in a non-negotiated form contract is valid, so long as it is not fundamentally unfair." *Id.* (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991)).

Enforcing the forum selection clause is not unreasonable or unjust because Lens.com is located in Nevada. Compl. ¶ 4; Jaeck Dec. ¶ 5. Any alleged wrongdoing by Lens.com would have originated there. Additionally, Gonneville willingly agreed to the Terms of Use each of the three times she purchased contact lenses from Lens.com. Compl. ¶¶ 20–22. Moreover, Lens.com did not surreptitiously insert these terms without any notice to Gonneville.

### 3.    Gonneville Will Not Be Deprived of Her Day in Court.

Next, transferring this case to the U.S. District Court for Nevada would deprive

Gonneville of her day in court. This factor requires a showing of "practical impossibility." *Huffington*, 637 F.3d at 24 (citing *Furness v. Wright Med. Tech., Inc.*, 402 F.3d 62, 66 (1st Cir. 2005)). Gonneville cannot meet her burden to show that transfer would be so difficult that she loses her day in court because parties to a forum selection clause "waive their right to challenge the preselected forum as inconvenient." *Atlantic Marine*, 571 U.S. at 64. Gonneville has not pleaded any facts that demonstrate transfer of this dispute from Massachusetts to Nevada will make litigation practically impossible.

Even if remedies differ slightly between Nevada and Massachusetts, "federal judges routinely apply the law of a state other than the state in which they sit." *Atlantic Marine*, 571 U.S. at 67. A U.S. district court judge sitting in Nevada is just as capable of applying the law applicable to this case as a U.S. district court judge sitting in Massachusetts. Thus, transferring this case to the District of Nevada will not deprive Gonneville of a remedy because her lawsuit may be pursued in the District of Nevada just as it can be pursued in the District of Massachusetts.

### 4.    Transfer Is Not Against Public Policy; It Furthers Public Policy.

Finally, Gonneville cannot show that enforcement of the forum selection clause would be against public policy. In fact, a strong public policy in favor of transfer is the conservation of judicial resources. *E.g.*, *Wiley v. Gerber Prods. Co.*, 667 F. Supp. 2d 171, 173 (D. Mass. 2009) (noting that to avoid "duplicative litigation and a waste of judicial resources" the "likelihood of consolidation, therefore, weighs in favor of transfer" (quotation omitted)). Because there is a forum selection clause that requires any action, including all five class actions, to be filed in Nevada, and the lawsuits are premised upon the same allegations, the lawsuits can be consolidated. As mentioned above, there is already one purported nationwide class action

13

pending in Nevada. This policy thus favors transfer to the District of Nevada for consolidation.

Consolidation will require one judge in one court to handle all five lawsuits, thus preventing the

wasteful and duplicative use of court resources and curtailing the potential for inconsistent

and/or overlapping rulings.

### G.    The Public Interest Factors Support Transfer.

The public interest factors confirm that transfer is in the interest of justice under

§ 1404(a). When a court is evaluating a motion to transfer that involves a forum selection clause,

the court "should not consider arguments about the parties' private interests." *Atlantic Marine*,

571 U.S. at 64. Thus, the court "may consider arguments about public interest factors only." *Id.*

Even though the court "may consider" such factors, these "factors will rarely defeat a transfer

motion." *Id.* Accordingly, "forum-selection clauses should control except in unusual cases." *Id.*

This is not an unusual case.

Courts evaluate several factors when considering the public interest. (1) The Court can

and should consider consolidation in its decision to transfer." *Wiley*, 667 F. Supp. 2d at 173.

Other public interest factors include: (2) "the administrative difficulties flowing from court

congestion;" (3) "the local interest in having localized controversies decided at home;" and (4)

"the interest in having the trial of a diversity case in a forum that is at home with the law."

*Firemen's Ins. Co. v. Ace Am. Ins. Co.*, 390 F. Supp. 3d 267, 273 (D. Mass. 2019) (quoting

*Atlantic Marine*, 571 U.S. at 62 n.6). Each of these public interest factors support transfer to the

District of Nevada.

1.     **Transfer to Nevada Will Enable Consolidation, Conserve Judicial Resources and Avoid Inconsistent Rulings.**

Lens.com will move to consolidate all five overlapping and duplicative class action lawsuits in the District of Nevada to preserve judicial resources and avoid inconsistent rulings. Accordingly, the public interest is served by transfer to the District of Nevada. The "pendency of related litigation in the transferee forum weighs heavily in favor of transfer." *Johnson v. New York Life Ins. Co.*, 2013 U.S. Dist. LEXIS 35434, *7 (D. Mass. Mar. 14, 2013) (citing *Cianbro Corp. v. Curran-Lavoie, Inc.*, 814 F.2d 7, 11 (1st Cir. 1987)). In fact, permitting "a situation in which two cases involving precisely the same issues are pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." *Id.* (citing *Cont'l Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26 (1960) (superseded by statute on other grounds)). Transfer for consolidation also alleviates the risk of inconsistent rulings when the cases are similar. *See id.* (noting that "[j]udicial economy and the avoidance of inconsistent judgments are prominent among the principle elements of systemic integrity" (quoting *Samsung Electronics Co., Ltd. v. Rambus, Inc.*, 386 F. Supp. 2d 708, 721 (E.D. Va. 2005))). Thus, the interest of justice requires transfer of a case to a jurisdiction with pending litigation based on the same allegations. That jurisdiction is the District of Nevada.

At present, there are five class actions in five different jurisdictions involving the same allegations against Lens.com. *See supra* at 3. Each of these class actions allege that Lens.com engaged in "unfair and deceptive sales practices" because "Lens.com adds an undisclosed and non-itemized 'processing charge' to contact lens orders." *See*, e.g., Compl. ¶ 1. These cases thus all involve "common question[s] of law or fact" and are prime candidates for consolidation. *See*

Fed. R. Civ. P. 42(a). Furthermore, all of the plaintiffs and putative class members in these cases are subject to the forum selection clause discussed earlier. Thus, these cases likely will be consolidated after transfer in Nevada. Transfer to Nevada, followed by consolidation, will conserve judicial resources because only one court will rule on the five virtually identical class actions. *See Johnson*, 2013 U.S. Dist. LEXIS 35434 at *10 (granting a motion to transfer to conserve judicial resources). There is no reason for five different courts to hear the exact same arguments when it would be more efficient to proceed in a single forum.

Transfer and consolidation will also alleviate the risk of inconsistent rulings because the cases are premised on nearly identical allegations and the proposed classes overlap. This factor is especially important here, because the Nevada suit asserts a nationwide class, which appears to include Gonneville. Separate lawsuits in separate courts could lead to inconsistent and/or duplicative rulings concerning Gonneville's claim and those of every other Massachusetts resident. Transfer to Nevada for consolidation will thus limit inconsistent rulings and conserve "time, energy, and money." *Id.* at *7 (quoting *Cont'l Grain*, 364 U.S. at 26). The public interest is thus best served by having one judge rule on all five factually and legally similar class actions.

### 2. Congestion in the Court and Burden on Juries Favors Transfer to Nevada.

As discussed above, there are five class action lawsuits that all involve the same types of factual and legal questions. *See supra* at 3. Transfer to Nevada enables consolidation with the case pending there which will ease the burden on courts and juries in Florida, California, Illinois, and Massachusetts.

### 3.     Desirability of Having Localized Controversies Decided at Home.

Although both Massachusetts and Nevada have some interest in the dispute, this factor

also weighs in favor of transfer. When viewed against the backdrop of five separate class actions

involving the same allegations against Lens.com, it is clear that Nevada is the state that has the

highest level of interest in deciding this controversy because Lens.com, as the only common

party among the suits, is a Nevada corporation.

### 4.     The Difficulty in Determining Applicable Law and Applying Foreign Law Favors Transfer to Nevada.

The final factor weighs in favor of transfer because Lens.com's Terms of Use make it

clear that Nevada law is meant to govern. Nevada courts are thus more familiar with the law

needed to evaluate the Terms of Use. Even considering that Gonneville's causes of action arise

under Massachusetts law, "federal judges routinely apply the law of a state other than the state in

which they sit," so there is no reason to believe a federal judge in Nevada is any less qualified to

adjudicate this dispute. *See Atlantic Marine*, 571 U.S. at 67. This is especially true because

Gonneville has made generic breach of contract and common law claims against Lens.com.

Compl. ¶¶ 33–52.

In sum, all public interest factors weigh in favor of transfer. Gonneville cannot show that

this case is one of the "extraordinary circumstances" mentioned in *Atlantic Marine* that would

warrant denial of the motion of transfer.

## IV.     CONCLUSION

For the foregoing reasons, the Court should grant Lens.com's motion and transfer this case

to the U.S. District Court for the District of Nevada.

17

Respectfully Submitted,

LENS.COM, INC.

By its attorneys:

*/s/ Theodore J. Folkman*

Theodore J. Folkman (BBO No. 647642)
RUBIN AND RUDMAN LLP
53 State St.
Boston, Mass. 02109
(617) 330-7135
tfolkman@rubinrudman.com

Mark Bettilyon (pro hac vice)
Jed Hansen (pro hac vice)
THORPE NORTH & WESTERN, LLP
The Walker Center
175 S. Main Street, Suite 900
Salt Lake City, Utah 84111
(801) 566-6633
mark.bettilyon@tnw.com

Dated: June 5, 2024