UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ANGELA GONNEVILLE, individually and on behalf of all others similarly situated,<br><br>　　　　Plaintiff,<br><br>v.<br><br>LENS.COM, INC.,<br><br>　　　　Defendant. | Civ. A. No. 1:24-cv-11110<br><br>*Leave granted July 8, 2024* |

**DEFENDANT LENS.COM, INC.'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO TRANSFER VENUE TO THE DISTRICT OF NEVADA PURSUANT TO 28 U.S.C. § 1404**

**TABLE OF CONTENTS**

I. INTRODUCTION .................................................................................................................. 1
II. ARGUMENT ........................................................................................................................ 2
    A. Gonneville Admits the Terms of Use Form a Valid Agreement ..................................... 2
    B. The Central District of California Found Reasonable Notice. ........................................ 3
        1. Lens.com's Notice Is Reasonably Conspicuous. ............................................................ 4
        2. Gonneville "Took Some Action" Manifesting Assent. .................................................. 8
    C. Gonneville's Citations Are Distinguishable ..................................................................... 9
    D. Analogous Case Law Supports Lens.com ..................................................................... 12
    E. Gonneville Does Not Address Enforceability. .............................................................. 14
    F. Gonneville's Criticism of Tim Jaeck's Declaration is a Red Herring ............................ 15
III. CONCLUSION .................................................................................................................. 16

# TABLE OF AUTHORITIES

**Cases**

*Atlantic Marine Constr. Co. v. United States Dist. Ct.*,
  571 U.S. 49 (2013) .................................................................................................. 14
*Berman v. Freedom Fin. Network, LLC*,
  30 F.4th 849 (9th Cir. 2022) ..................................................................................... 4
*Cullinane v. Uber Technologies Inc.*,
  893 F.3d 53 (1st Cir. 2018) ..................................................................................... 10
*Gaker v. Citizens Disability, LLC*,
  654 F. Supp. 3d 66 (D. Mass. 2023) ........................................................................ 11
*In re Daily Fantasy Sports Litigation*,
  U.S. Dist. LEXIS 206689 (D. Mass. Nov. 27, 2019) ............................................... 12
*Kauders v. Uber Techs*,
  486 Mass. 557, 159 N.E.3d 1033 (2021) ......................................................... 3, 9, 12
*Keebaugh v. Warner Bro. Ent. Inc.*,
  100 F.4th 1005 (9th Cir. 2024) .............................................................................. 4, 7
*Oberstein v. Live Nation Ent. Inc.*,
  60 F.4th 505 (9th Cir. 2023) ........................................................................ 4, 7, 8, 12
*Sgouros v. TransUnion Corp.*,
  817 F.3d 1029 (7th Cir. 2015) ................................................................................. 10
*Walsh v. Teltech Sys. Inc.*,
  Civil Action No. 13-13064-RWZ, 2015 U.S. Dist. LEXIS 191349, 2015 WL 12856456 (D. Mass. July 30, 2015) ........................................................................................... 16
*Yei A. Sun v. Advanced China Healthcare, Inc.*,
  901 F.3d 1081 (9th Cir. 2018) ................................................................................. 15

**MEMORANDUM OF LAW**

I.      **INTRODUCTION**

A valid forum-selection clause controls in all but the most exceptional cases. The forum-selection clause here is valid and should be enforced here on numerous grounds.

First, Gonneville admitted in her First Amended Complaint ("Complaint") that Lens.com's Terms and Conditions of Use ("Terms of Use") is a contract between her and Lens.com. In her Complaint, Gonneville alleges that her "purchase of contact lenses constituted a contract between [her] and Lens.com, *namely through the terms and conditions on the Lens.com site*." She further alleges that she and class members "performed all requirements under their agreements with Lens.com" and that "Lens.com breached its agreement with" her and class members. These allegations demonstrate that Gonneville has manifested assent to the Terms of Use. Gonneville cannot simultaneously file a breach of contract claim against Lens.com premised on the Terms of Use and claim she has not manifested assent to those same Terms of Use. Gonneville completely ignores these arguments in her Opposition and offers no explanation regarding how she can claim to enforce the Terms of Use, but Lens.com cannot. As a result, the Motion to Transfer must be granted.

Second, in direct contrast to Gonneville's admission that the Terms of Use form an enforceable agreement, Gonneville alleges that Lens.com's website does not provide reasonable notice of the Terms of Use.  Setting aside that inconsistency, Gonneville's allegations lack merit. The District Court for the Central District of California in *Adam Nail v. Lens.com, Inc.*, Case No. 2:24-cv-02531 recently considered substantially the same facts and questions of law in a similar Motion to Transfer filed by Lens.com.  The *Nail* court found that Lens.com's website "provides conspicuous notice of the terms to which the user agrees, and because a user making a purchase

1

must unambiguously assent to those terms, the forum-selection clause is valid." The *Nail* court found the forum-selection clause to be enforceable and transferred the case to the United States District Court for the District of Nevada. The forum-selection clause in both cases is identical and is valid and enforceable for substantially the same reasons. Gonneville was provided with a copy of *Nail* before she filed her Opposition. And Gonneville, fully aware of this opinion, offers no explanation regarding why this Court should not adopt the findings of *Nail*.

Finally, Gonneville criticizes the declaration of Tim Jaeck. Gonneville's criticisms are a red herring. In his declaration, Jaeck provided a copy of the Terms of Use and a printout of the page on Lens.com's website where a user agrees to the Terms of Use before providing payment information and submitting their order. Gonneville has access to this very same information and knows exactly what the website looked like when she made her purchases. She offers no evidence or testimony that the Jaeck Declaration is inaccurate even though the historical Terms of Use and the website are freely available for her review using services such as web.archive.org, commonly referred to as the "Wayback Machine." Gonneville's request for "jurisdictional discovery on the content of [Lens.com's] website interface and Terms of Use on each date of Plaintiff's purchases" is thus a waste of time and should be denied.

## II.  ARGUMENT

### A.  Gonneville Admits the Terms of Use Form a Valid Agreement.

In Count I of her Complaint, Gonneville alleges that Lens.com breached an agreement that she had with Lens.com based on the Terms of Use. Specifically, Gonneville alleges that her "purchase of contact lenses constituted a contract between [her] and Lens.com, *namely through the terms and conditions on the Lens.com site*." Complaint [ECF No. 15] ¶ 37 (emphasis added). Gonneville further alleges that she and class members "performed all requirements under their

agreements with Lens.com" and that "Lens.com breached its agreement with" her and class members. *Id.* ¶¶ 38–39. On top of pleading a valid and enforceable contract, Gonneville admits in her Opposition that the Terms of Use "provide for … venue in Nevada [and] application of Nevada law." Opp'n [ECF No. 33] at 9. If there is an agreement between Gonneville and Lens.com based on the "terms and conditions on the Lens.com site," it logically follows that Gonneville has "manifested assent" to the Terms of Use. *Kauders v. Uber Techs*, 486 Mass. 557, 572, 159 N.E.3d 1033 (2021). To rule otherwise would require a court to allow a litigant to enforce part of an agreement, while refusing to be bound by other parts of the same agreement. For these reasons alone, the motion to transfer should be granted.

### B. The Central District of California Found Reasonable Notice.

Even though Gonneville filed a breach of contract claim that mentions the Terms of Use, she argues that Lens.com's website does not provide reasonable notice of its Terms of Use. Gonneville's arguments were recently considered in *Adam Nail v. Lens.com, Inc.*, Case No. 2:24-cv-02531, in the Central District of California. In *Nail*, the court found that Lens.com does, in fact, provide reasonable notice of its Terms of Use and granted Lens.com's motion to transfer to the United States District Court for the District of Nevada. Judge Stanley Blumenfeld's Order Granting Defendant's Motion to Transfer Venue ("*Nail*") [ECF No. 34] (June 20, 2024) is attached as Exhibit A. Gonneville's counsel was provided with a copy of *Nail* before the Opposition was filed. Gonneville thus had an opportunity to address the findings of *Nail* but chose instead to ignore this opinion.

*Nail* is instructive here. While *Nail* applies California law, the *Nail* Court noted the similarities between California and Massachusetts law. "To form a contract under California or Massachusetts law, there must be actual or constructive notice of the agreement and the parties

3

must manifest mutual assent." *Oberstein v. Live Nation Ent. Inc.*, 60 F.4th 505, 512–13 (9th Cir. 2023). Under California or Massachusetts law, "an enforceable agreement may be found where '(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms.'" *Id.* at 515 (citing *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022)); *see also id.* ("California and Massachusetts law apply 'substantially similar rules.'").

### 1. Lens.com's Notice Is Reasonably Conspicuous.

The first prong of the reasonable constructive notice test considers "both the visual placement of the notice and the context of the transaction." *Nail* at 5 (citing *Keebaugh v. Warner Bro. Ent. Inc.*, 100 F.4th 1005, 1019–20 (9th Cir. 2024)).

#### a. The Visual Placement Supports Finding Conspicuous Notice.

In *Nail*, the plaintiff stated that he made purchases on Lens.com's website using either his computer or his iPhone. *Id.* The court considered images of the website as seen on a computer screen or an iPhone, which are reproduced on the next page.[1] *Id.* at 5–6.

---

[1] The *Nail* court noted that "[b]oth images have been reduced in size from what a user would see on an iPhone 12 (or more recent variant with the same size screen) or 16-inch laptop computer." *Nail* at 5 n.2.





5

In *Nail*, the court found that "[a] review of the website on both a computer and an iPhone demonstrated the conspicuous nature of the Terms of Use hyperlink" for several reasons. *Nail* at 7. First, the court found that "the Terms of Use hyperlink is presented in black font against a white background—the same contrast as the rest of the writing on the page." *Id.* "Second, the Terms of Use hyperlink is presented directly below a bright red button that the user of the website is required to identify and click to continue to the subsequent step in the ordering process." *Id.* "Third, the overall webpage design as it appears on the computer and phone is uncluttered and places the Terms of Use hyperlink sufficiently close to the 'Continue' or 'Go to Checkout' buttons while offsetting it with enough white space for it to stand out." *Id.* Finally, the court found that "when a user hovers the mouse over the Terms of Use hyperlink the font turns red, further causing it to stand out." *Id.*

Gonneville contends that Lens.com's notice of its Terms of Use was not reasonable because it "was buried in small, black font below big, red highlighted and boxed commands." Opp'n at 6, 10, 11. Gonneville also argues that Lens.com "buries the notice on a page otherwise full of colors and font designed to get the consumer to complete the transaction, not review the 'Terms & Conditions.'" *Id.* at 11. However, as shown in the images above, Lens.com's notice is not buried at all. It is immediately adjacent to the buttons with, as the *Nail* court noted, "enough white space for it to stand out." *Nail* at 7.

Gonneville contends that Lens.com's notice was not reasonable because the Terms of Use hyperlink was "in black font, rather than typical blue." Opp'n at 6, 10. The *Nail* court found that "while simply underscoring words or phrases will often be insufficient, this is not always the case." *Nail* at 7 (citation omitted). The court specifically found that "[a]lthough the hyperlinks are the same color as the font on the rest of the page, the black font stands out against the white

6

background, the Terms of Use hyperlink is directly beneath the continue button, and the webpage is largely uncluttered. Moreover, other hyperlinks … throughout the purchasing process … are underlined in black font, indicating that this is the 'customary design element[] denoting the existence of a hyperlink' on [Lens.com's] website." *Id.* at 7–8 (citing *Keebaugh*, 100 F.4th at 1021 (cleaned up)).

The *Nail* court ultimately found that "the visual notice 'puts a reasonable user on notice that they are agreeing to be bound by the Terms of Service.'" *Id.* at 8 (citing *Keebaugh*, 100 F.4th at 1021). For the same reasons, this Court should find that the visual placement of Lens.com's notice of its Terms of Use supports a finding of conspicuous notice.

> b. *The Context of the Transaction Supports Finding Conspicuous Notice.*

The *Nail* court next addressed the context of the transaction. *Nail* at 9. The court found that "the context of the transaction supports the conspicuousness of the notice of the Terms of Use." *Id.* The court stated that the "context of a transaction supports a determination that the notice is conspicuous where the user is presented with terms and conditions 'when creating an account, signing into an account, and completing a purchase.'" *Id.* (citing *Oberstein*, 60 F.4th at 515). "Purchasing a product, unlike a free trial, contemplates 'some sort of continuing relationship,' especially as it would relate to the purchase itself." *Id.* at 9 (citing *Oberstein*, 60 F.4th at 517). "This is even more true when the purchase is made for a consumable item—such as contact lenses—where repeat purchases are likely to occur given the general disposable nature of the good." *Id.* Additionally, the court found that the plaintiff "made multiple visits to the website, making purchases on two separate occasions, during each of which he was required to go through the extensive order process." *Id.* (citation omitted). The *Nail* court ultimately found that "both the visual notice and the context of the transaction support a finding that the notice is

7

conspicuous." *Id.* For the same reasons, this Court should find that Lens.com's notice of its Terms of Use is reasonably conspicuous.

Gonneville contends that the "size and nature of the transaction did not put [her] on notice that she was entering into a complex contract that dramatically limited her rights." Opp'n at 6. As explained above, the *Nail* court would disagree. Gonneville was required to create an account by providing her name, address, phone number, email address, and a password, or "sign in" to her account on each of the three occasions that she purchased contact lenses on Lens.com's website. Transfer Motion at 8; Jaeck Dec., Ex B. She was also required to provide her prescription and her doctor's information. She also bought lenses from Lens.com on at least three occasions. Complaint ¶¶ 20–22. All of this contemplates "some sort of continuing relationship." As the *Nail* court explained, this "is even more true when the purchase is made for a consumable item—such as contact lenses—where repeat purchases are likely to occur." *Nail* at 9.

### 2. Gonneville "Took Some Action" Manifesting Assent.

The second prong of the reasonable constructive notice test analyzes "whether the user took some action that unambiguously manifested the user's assent to the agreement." *Oberstein*, 60 F.4th at 517. In *Nail*, the court found that users of Lens.com's website "are expressly alerted that, by continuing with the purchase, they 'agree to our <u>Terms of Use</u> & <u>Privacy Policy</u>.'" *Nail* at 9. The court found that "that is all that is required." *Id.* (citing *Oberstein*¸ 60 F.4th at 517 (finding the analysis "straightforward" where the user was alerted that by continuing, the user "agrees to our Terms of Use.")).

The *Nail* court thus ultimately found that because Lens.com's website "provides conspicuous notice of the terms to which the user agrees, and because a user making a purchase

8

must unambiguously assent to those terms, the forum-selection clause in the Terms of Use is valid." *Id.*

Gonneville argues that Lens.com's notice does not express "particularized assent to the to the terms and conditions" and "was not a condition to completing the transaction." Opp'n at 6. As explained above, Gonneville's argument lacks merit. Gonneville, like Nail, was "expressly alerted that, by continuing with the purchase" she was agreeing to the Terms of Use. Additionally, Gonneville was not able to complete the transaction without clicking "Continue" or "Go to Checkout" and thereby manifesting assent to the Terms of Use. Beyond this, and as noted above, Gonneville also manifested assent by filing a contract claim to enforce the Terms of Use against Lens.com.

For all of these reasons, and as already found by *Nail*, this Court should find that Lens.com's website provides conspicuous notice of the Terms of Use to which users agree, that users making a purchase must unambiguously assent to the Terms of Use, and therefore, the forum-selection clause in the Terms of Use is valid.

**C. Gonneville's Citations Are Distinguishable.**

Gonneville cites several cases in support of her argument that the Terms of Use were not reasonably conspicuous. They are all distinguishable from the facts here. For example, in *Kauders v. Uber Techs.*, 456 Mass. 557 (2021), the court noted that "the notice and link for the terms and conditions remain at the very bottom of the screen, while the white credit card field remains at the top and the PayPal button remains in the middle of the screen . . . Moreover, while the record does not explain what happens if the user clicks 'scan your card' or the PayPal button in the middle of the screen, it seems likely that, in either situation, the terms and conditions

9

notice and link either remain at the bottom of the screen or disappear from view altogether." *Id*. at 578-79. These facts are not applicable here.

*Cullinane v. Uber Technologies Inc.*, 893 F.3d 53 (1st Cir. 2018) is also distinguishable. In *Cullinane*, the district court pointed to several important distinguishing facts. As shown below, the district court noted that "the 'Terms of Service & Privacy Policy' hyperlink was presented in a gray rectangular box in white bold text." *Id*. at 63. In addition, "the terms 'scan your card' and 'enter promo code' were also written in bold and with a similarly sized font as the hyperlink. Both versions . . . also included the words 'CANCEL' and 'DONE,' – the latter being barely visible until the user had entered the required payment information – in all capital letters and dark colored font. Meanwhile, the top of the screens features the terms 'Link Card' or 'Link Payment' in large capital letters and dark colored font." *Id*. "The inclusion of the additional payment option and the placement of a large blue PayPal button in the middle of the screen were more attention-grabbing and displaced the hyperlink to the bottom of the screen." *Id*.



*Sgouros v. TransUnion Corp.*, 817 F.3d 1029 (7th Cir. 2015), is also distinguishable. In *Sgouros*, the court concluded "what cinches the case for Sgouros is the fact that TransUnion's

site actively misleads the customer. The block of bold text below the scroll box told the user that clicking on the box constituted his authorization for TransUnion to obtain his personal information. It says nothing about contractual terms. No reasonable person would think that hidden within that disclosure was also the message that the same click constituted acceptance of the Service Agreement." *Id.* at 1035. An image of the notice at issue in *Sgouros* is included below:



Likewise, in *Gaker v. Citizens Disability, LLC*, 654 F. Supp. 3d 66, 75 (D. Mass. 2023), the Court "accorded significant weight to the fact that the terms appeared below the 'CONFIRM YOUR ENTRY'" button, such that a user could—and in all likelihood, would—click on the button without ever reaching the portion of the page disclosing the terms." The court also noted that "the website plainly does all it can to divert the user's attention away from the terms: the

page is replete with images of gold coins and dollar signs and is headlined with large text reading 'Where should we send YOUR $50,000 if you win?'" *Id*.

Lens.com's presentation of its Terms of Use is different from the cases noted above. At least for the reasons noted by the *Nail* court, notice of the Terms of Use is placed directly adjacent the CONTINUE button and is in a dark black font against a white background in uncluttered space with enough white space for it to stand out. Nail Order at 7.[2]

### D. Analogous Case Law Supports Lens.com

Courts in this district analyzing facts similar to those here have concluded that the subject websites provided reasonable notice. For example, in *In re Daily Fantasy Sports Litigation*, the court noted "[a]ny player who deliberately clicked the 'Play Now' button had such notice from the text immediately adjacent to the button, and by clicking the button, indicated consent." 2019 U.S. Dist. LEXIS 206689, at *53–54 (D. Mass. Nov. 27, 2019). "Because the text is simple and uncluttered, though small in size, any viewer noticing the block itself would notice the bolded words 'Terms of Service' within it and would recognize the phrase as a hyperlink to another document. The viewer would thus understand that there were terms that would govern the

---

[2] To the extent Gonneville contends that *Kauders v. Uber Techs.*, 486 Mass. 557 (2021) imposes a different or more stringent standard, it does not. The Ninth Circuit found that "*Kauders* did not break any new legal ground. Rather, the Massachusetts Supreme Judicial Court engaged in the same 'fact-intensive inquiry' as have other courts, including this one, that apply the reasonableness test." *Oberstein*, 60 F.4th at 513–514. "That 'it will be difficult for the offeror to carry its burden' in cases involving non-clickwrap websites does not reflect a novel standard, but rather the same sort of common-sense factual conclusion made by courts applying the reasonableness framework to the spectrum of online agreements." *Id.* (citing *Kauders*, 486 Mass. at 575). "Thus, while clickwrap represents "the clearest manifestations of assent" and is "certainly the easiest method of ensuring the terms are agreed to," it is "not necessarily required." *Id.* (citing *Kauders*, 486 Mass. at 574).

parties' relationship and that the terms were available to be reviewed." *Id.* at *52. An image of the notice at issue in *Daily Fantasy Sports* is included below:



The Lens.com notice (shown below) is at least as, if not more, conspicuous as that in *Daily Fantasy Sports*.



13

### E. Gonneville Does Not Address Enforceability.

Gonneville does not address the enforceability of the parties' forum-selection clause and thereby concedes that if valid, it is enforceable. For the Court's convenience, Lens.com summarizes the *Nail* court's analysis of this issue below.

In *Nail*, the court analyzed whether the forum-selection clause is enforceable. "When parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause." *Atl. Marine Constr. Co. v. United States Dist. Ct.*, 571 U.S. 49, 62 (2013). A motion to transfer based on such a clause should be denied only under "extraordinary circumstances unrelated to the convenience of the parties." *Id.* When determining whether to transfer a case, courts typically weigh relevant public-interest considerations and the convenience of the parties. *Id.* However, where a valid forum-selection clause exists, "the plaintiff's choice of forum merits no weight," the court "should not consider arguments about the parties' private interests," and the normal choice of law rules do not apply. *Id.* at 63–64. A valid "forum selection clause [should be] given controlling weight in all but the most exceptional cases." *Id.* at 59–60.

"Extraordinary circumstances or exceptional reasons to find that a forum-selection clause is invalid can be found where: '(1) the clause is invalid due to fraud or overreaching, (2) enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision, or (3) trial in the contractual forum will be so gravely difficult and inconvenient that [the litigant] will for all practical purposes be deprived of his day in court.'" *Nail* at 10 (citing *Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1088 (9th Cir. 2018) (cleaned up)).

In *Nail*, the court found that the plaintiff's case was not exceptional because he did not assert any extraordinary circumstances or exceptional reasons for invalidating the forum-selection clause. *Id.* Neither does Gonneville. For the same reason, this Court should find that Gonneville's case is not exceptional.

Thus, the Court should find that the parties' forum-selection clause is valid and enforceable and transfer this case to the United States District Court for the District of Nevada.

**F.      Gonneville's Criticism of Tim Jaeck's Declaration is a Red Herring.**

In his declaration, Tim Jaeck provided a copy of the Terms of Use (Exhibit A to the Jaeck Dec.) and a printout of the page on Lens.com's website where a user agrees to the Terms of Use before providing payment information and submitting their order (Exhibit B to the Jaeck Dec.). Gonneville argues that the images from Lens.com's website provided in the Jaeck Declaration [ECF No. 20] are unreliable because they do not include "dates or history as to when those pages were on the site or whether those pages were presented to the Plaintiff when she made her purchase." Opp'n at 5. Gonneville's argument lacks merit for at least two reasons.

First, presumably Gonneville reviewed Lens.com's Terms and Conditions before filing a breach of contract claim premised on the Terms and Conditions. Claims to the contrary must thus be viewed with some degree of skepticism.

Second, even if Gonneville had not filed a breach of contract claim mentioning the Terms of Use and relying on the Terms of Use, Gonneville has access to the very same information provided in Exhibits A and B to the Jaeck Declaration. Exhibit A is a "true and correct copy of the Terms of Use." Jaeck Dec. ¶ 6. And Exhibit B is a "true and correct printout of the shipping information and order summary page" on Lens.com's website. *Id.* ¶ 9. Gonneville knows exactly what the website looked like when she made her purchases in August 2019, May 2020 and April

15

2021. Complaint ¶¶ 20–22. Websites such as web.archive.org are publicly accessible and have information related to the historical appearance of websites. Such websites are frequently referenced as sources of information. *See Walsh v. Teltech Sys. Inc.*, Civil Action No. 13-13064-RWZ, 2015 U.S. Dist. LEXIS 191349, 2015 WL 12856456, at *1 n.2 (D. Mass. July 30, 2015), *aff'd*, 821 F.3d 155 (1st Cir. 2016) (taking judicial notice of the content of certain archived Wayback Machine webpages "as facts that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned" and listing cases where the same was followed) (additional citation omitted). Gonneville had the opportunity to provide evidence that Exhibit A or Exhibit B is inaccurate, but she has not done so. Gonneville's request for "jurisdictional discovery on the content of [Lens.com's] website interface and Terms of Use on each date of Plaintiff's purchases" [Opp'n at 6] should be denied.

### III.   CONCLUSION

The parties entered into a contract that contains a valid forum-selection clause. And Gonneville has filed a lawsuit to enforce that very contract. These actions manifest assent. Gonneville was also provided with reasonable notice of her acceptance of the Terms of Use, when she purchased her contacts from Lens.com. Gonneville identifies no extraordinary circumstances that warrant rejection of the forum-selection clause. Accordingly, the Court should grant the motion to transfer to the United States District Court for the District of Nevada.

Respectfully Submitted,

LENS.COM, INC.

By its attorneys:

*/s/ Theodore J. Folkman*

Theodore J. Folkman (BBO No. 647642)
RUBIN AND RUDMAN LLP
53 State St.
Boston, Mass. 02109
(617) 330-7135
tfolkman@rubinrudman.com

Mark Bettilyon (pro hac vice forthcoming)
Jed Hansen (pro hac vice forthcoming)
THORPE NORTH & WESTERN, LLP
The Walker Center
175 S. Main Street, Suite 900
Salt Lake City, Utah 84111
(801) 566-6633
mark.bettilyon@tnw.com

Dated: July 12, 2024